Salvatore Arnone v. Aetna Life Insurance Company. Thank you. Good morning, Council. Good morning, Your Honors. And may it please the Court, my name is Frank Linsala and I represent Salvatore Arnone, the opponent in this case. This is an action brought by Mr. Arnone to obtain the benefits due under his disability policy issued by Aetna Insurance Company. At issue in this case is whether Aetna can reduce the benefits that it owes by deeming Arnone's personal injury settlement to include other income benefits that duplicate its disability coverage, even though this kind of duplication is precluded as a matter of law under New York personal injury recovery rules. How do you get to New York law when the choice of law is Connecticut? Well, the choice of law is a red herring in this case. What matters here is what Mr. Arnone's recovery actually includes in terms of damages in relation to his disability policy. New York law prohibits Mr. Arnone from recovering any insured loss as part of his damages in the personal injury case. As a result, no part of his recovery can be for the kind of disability payment that the policy requires in order to reduce his benefits. So because New York law prohibits recovery... Why does New York law take precedence over the plan, which is a self-contained document? The insurer is in Connecticut. There's a provision in the plan that speaks directly to how to treat settlements as potential offsets. Why do we get to New York law at all? New York law governs the recovery in Mr. Arnone's personal injury case. The elements of the recovery are what's important in terms of the plan under Aetna's disability policy. The disability plan says we can reduce benefits if the payment that you received was a disability payment. Nothing in Mr. Arnone's personal injury settlement was a disability payment except for the portion allocated to workers' compensation. That's by statute in New York. How do we know what it was? The record doesn't reflect very much in terms of how it was calculated, what it was designed to do. All we know is there was a statutory right to offset the workers' comp payments for compensation against the $800,000 that he recovered. GOL 5-335 provides a conclusive presumption that no portion of a settlement obtained in a personal injury action in New York includes any loss that has already been compensated or is expected to be compensated by a collateral source of benefits, by an insurer. Is that a conclusive presumption that's irrebuttable? Or is it rebuttable if the settlement had, for example, said this is all to offset your expected losses of earnings? Well, the statute provides that as a conclusive presumption. It says that right in the statute. I'm not aware of any case law that says that can be rebutted in any manner. In fact, New York recovery rules have long provided that there is no recovery for an insured loss. CPLR 4545 prohibits recovery of any insured loss that's been covered by a collateral source of benefits. So as a matter of law in New York, no personal injury recovery ever includes anything that's already covered by another source of benefits, including a disability policy here. Except for workers' compensation. Except for workers' compensation. There's a statutory carve-out for the workers' compensation. We get ours, but other insurers don't get theirs. Right. Well, it's a state-mandated program. And to the extent that disability, short-term disability is a state-mandated program as well, there's no recovery even for private insurers who provide short-term disability coverage in lieu of the state program. Tell me again how you get to New York law. New York law, Mr. Arnold, he brought his personal injury case in New York court against a New York defendant under New York law. Aetna is the New York defendant? No, the original personal injury case against Mayapta. So New York's personal injury recovery rules govern the elements of Mr. Arnold's settlement. Is it true that this wasn't raised before the plan administrator? It was raised, but at best, the most charitable view of that from Aetna's point of view would be that the parties were talking past each other. Aetna says, show to us what portion of your recovery was for disability payments. Mr. Arnold's counsel says, the workers' compensation portion was for disability payments. Here's how it was calculated. Here's the amount we paid. That was all that was for disability payments. That was the only thing that could be classified as income replacement. But you never cited the statute to the plan administrator. Yes, the statute was never cited, but that doesn't give Aetna the right to simply ignore the law that governs personal injury recoveries of its insurance. Aetna has to make a determination as to what the recovery included in order to assess whether it has the right under its contract to reduce benefits due. So in making that assessment, Aetna necessarily has to refer to the personal injury law that They can't say, well, Mr. Arnone never told us that New York law applies to his New York personal injury case that was brought against a New York defendant in a New York court. How would we know but for Mr. Arnone telling us, you know, what law applied to his case? But why would it be arbitrary and capricious of them to not refer to it if Mr. Arnone didn't bring it up? Because by not looking at what law governs his case, Aetna's decision is erroneous as a matter of law. Because no portion of that recovery under New York law could have included income replacement damages, Aetna's determination was erroneous as a matter of law, and erroneous as a matter of law is one of the ways we define what's arbitrary and capricious. You're saying this is different than if Arnone knew some fact that only he could know and he didn't tell them about it that would affect this issue. This is something that is a question of law, and you would want Aetna to be held responsible for knowing the law of the various states in which they do business. Exactly, and I don't think that is too much to ask considering that Aetna is a licensed insurer in New York, it's licensed to do insurance business in New York and has been since 1857, I think that it should have at least a passing familiarity with the personal injury law of New York that governs its own insured's personal injury settlements and its own rights of recovery under its disability policies, because those two are linked. I don't think we even need to get to the question of whether GOL 5335 governs the policy terms of Aetna's long-term disability policy, because that's irrelevant. We're not talking about a law that is used to construe the terms of the policy or to invalidate the terms of the policy or to modify the terms of the policy. All GOL 5335 does is it prohibits insurers doing business in New York from interfering in the tort settlements of their insured's, and that's exactly what this is. So if you refer to the insured then, Aetna is both the plan administrator and insurer of this plan, right? And in your papers you seem to draw a distinction, as the Supreme Court has I think in Halliday, between self-funded plans and insured plans. So in a self-funded plan situation, if the plan had a provision similar to this that says we're going to presume 50% is for disability and what have you, do you say that the New York law would not apply, that the plan could go ahead and so provide and would have to be given effect because it's a self-funded plan and not subject to the ERISA savings for insurance regulation? It depends on how you look at the... Do you understand what I'm saying? I understand what you're saying, and that's very good because it's a little bit confusing under the statute. How are we looking at the application of GOL 5335? If you look at 5335 as the definition of what's recoverable in the personal injury claim, then that's one thing. It defines the elements of damages and what you can and cannot recover. So to the extent that the plan itself looks to what the elements of damages are that you recover, GOL 5335 defines that. To the extent that a plan might be self-funded, GOL 5335 would not apply to regulate the plan itself in terms of what it can and cannot do and what it can and cannot include in its plan provisions because that would be preempted under 514 of ERISA because as a self-funded plan you can't treat it as an insurer that goes into the market exchanging risk for premium dollars. So we can envision very different regimes for self-funded plans and non-self-funded plans with regard to whether 5335 nullifies this kind of provision that instructs how the administrator will treat a settlement. Well, yes and no. What you're saying is if it's a self-funded plan, the New York general obligations law could not trump an explicit provision of the plan because that would be not the regulation of insurance and would therefore be preempted and probably the idea that Connecticut law governs the plan might play some role there too. If the plan said something like if you get a settlement of any kind, we're going to assume that half of it is for disability benefits. I don't know whether that would be rational or not, but if they said that, I think you'd have a different situation if this weren't a regulation of insurance. But where it is a regulation of insurance, it might trump the plan. But what you're saying is either way, to the extent you treat the general obligations law as defining what's in the settlement as a matter of law, then I think are you saying it doesn't matter whether it's an insurer or somebody else? You've hit it right on the head, and the question is what does the plan provide? If the plan in this case had said we don't care how your recovery is characterized, whether it's for loss of income or whether it's for pain and suffering, whether it's for disability, whether it's for emotional distress, we don't care what the characterization is, we're entitled to recovery, then that would supersede the application of GOL 5335. However, in this case the plan specifically says we only recover if your underlying recovery is a disability payment. Could you have, well I don't know if it was you, could Mr. Arnone's lawyer have structured the settlement so that it was all for pain and suffering and neglected to do so? I think that's exactly what happened here. By definition, I mean nobody does this, you know, there's no need to do it, let's put it that way. Intentionally, there's no proactively. As a matter of course, in a New York personal injury settlement, everything that is not for workers' compensation or for another statutory carve out is for pain, suffering, disability. But it would have been helpful if it was included in the settlement terms. It could have, but again, typically in personal injury cases, the releases that are given are very broadly written and are meant to include all claims for damages that could have been brought from the beginning of time until the settlement date. So they're written very broadly. It's very difficult to get parties to agree to more restrictive language, especially defendants in a personal injury case, where they're trying to get a release for all potential liabilities through one lump sum settlement. All right, your time has expired. You reserve two minutes for rebuttal. We'll hear from Aetna. Thank you and good morning. May it please the court, my name is Michael Bernstein and I represent Aetna in this matter. Your Honor, the district court's opinion in order in favor of Aetna should be affirmed in all respects. Fundamentally, this is an ERISA 502A1B action for benefits. And as my colleague just argued, that's what he's seeking here. So right away we know that this is all going to be defined by the terms of the benefit plan. And we also know that because the benefit plan includes the grant of discretionary authority to Aetna, that the court's review is to be done in the arbitrary capricious standard of review. Suppose Mr. Arnone's lawyer at the time had sent in a copy of the settlement and in response to the question, what is this for, had said, well, it's all for pain and suffering, see New York General Obligations Law Section 5, whatever. Would that change the outcome? I don't know, Your Honor, that it would have changed the outcome, but it certainly is an important fact that would have given the folks at Aetna something to talk about here. I mean, as you recall, when the claim came in, that was exactly what Aetna was trying to find out is, well, how was this all divided up? And we got some earmarking for various different items, but nothing about everything being for pain and suffering. And that's what the plaintiff said it was, but we said we can't rely on that, you need to give us more. Because the plan defines the other income as amounts that he receives for his disability. And there's nothing that defines it. But don't we presume that parties know the law? I mean, it seems to me it would be one thing if Mr. Arnone had some factual knowledge about whatever that is a fact. No one knows this except him or his witnesses, and so he has to call that to their attention so they can investigate it. Here, what you're saying is they had an obligation to call Aetna's attention to a question of law, a New York statute. And if they don't do that, I understand you also have an argument that it wouldn't apply anyway and so on. But you're also making the argument that if Arnone doesn't specifically refer to the statute, Aetna does not act arbitrarily and capriciously by not knowing and not applying New York state law. That's correct, Your Honor, and there's several reasons for that. I mean, the first reason, I think, is obvious. You have to tell the claim fiduciary what it is that you're saying. And to just say it's pain and suffering because I say it so isn't enough. Secondly, while I don't really think we need to go too far down the ERISA preemption road on this case, there's a lot of law from this circuit, from every circuit, and the Supreme Court, that uniformity of plan administration is one of the core tenets of ERISA. And therefore, we don't ask ERISA claim fiduciaries and administrators to be familiar with the laws of the 50 states on every little issue that may come up before us. But this is not a little issue, and ERISA still contemplates room for state insurance regulation. So for insured plans, there's a whole network of 50 different regimes regulating insurers. And your colleague points out that workers' comp, the amounts that are payable, the amounts that are offsettable under the plan, would vary from state to state. Why is it such a burden for Aetna to be familiar with those, and doesn't that reflect that while national uniformity is a general goal, it doesn't trump every other interest? Right, but that's true to a point. But don't forget, there's a lot more to it than just being familiar with the anti-subrogation laws of the 50 states. They would also have to know what the state of the law is in the federal appellate courts. They would have to know also that there's currently a circuit split between this circuit and the Third Circuit and the Fourth Circuit and I think the Eighth Circuit on whether these statutes are preempted by ERISA. So they would also have to know which circuit they're in and what that circuit has to say. That's your business. That is your business. But this uniformity of plan administration and the whole idea of uniformity of plan administration is that the plan could be administered the same way in every state. And so given the same material facts for the same kind of claim, it would be decided the same in New Jersey as it would be decided in New York. Didn't the Supreme Court just put the kibosh on that, at least as far as it concerns any regulation that is characterized as a regulation of insurance? That may be so if it's an uninsured plan and you're not an insurer. But once you're an insurer, then aren't you responsible for you're stuck with the different laws of the 50 states because the laws of the 50 states about insurance are not preempted. To a point. To a point. And again, I don't think we need to go so far down the ERISA preemption road, but I think also that once you start really interfering with plan uniformity as the Supreme Court held in Concrete, that's a core tenet of ERISA preemption. And in Gobile, they also held that. Again, it's not like that's gone away. It's still a core tenet. But again, I don't think we need to go that far because, as Your Honors pointed out during the appellant's presentation, the plan has a choice of law provision. The Connecticut law is the law that's supposed to define the contract terms. And I disagree respectfully with Mr. Solomon's argument that New York is defining the contract terms. But his argument is that the personal injury lawsuit was brought in New York against a New York defendant, and the proceeds are in New York and subject to New York law. I understand that, but I disagree with him because the contract term we're defining is what is other income. And to the extent that other income is being defined by anything other than the terms of the contract itself, and I don't really think it's ambiguous, but if we have to go so far as to apply Connecticut law to what other income might be in this scenario, Connecticut law, as Mr. Solomon agreed in his papers, allows for this sort of a subrogation claim. And I think there's something else that we're losing sight of, and it's important to keep sight of. This is not a recovery of benefits, which was the case in the Wirtz v. Rawlings case, which is mentioned many times, but not during Mr. Solomon's comments. This is not a clawback of benefits that were already paid. This is simply Aetna trying to define the benefit that is owed to this member, taking into account and applying the other income offset provisions. Suppose the settlement had said on its face you're getting, I forget how many, $100,000 it was, $800,000? $850,000. You're getting in this settlement $849,999 for pain and suffering and $1 for disability. Would that be controlling under the terms of the plan? If it was actually allocated in there, I think it would be. It said that. That's the allocation. No matter how arbitrary it would seem to be that that's the allocation, if that's the formal allocation, under the plan, that would be controlling. Yeah, it would have to be because that would be submitted. It would be evidence in the administrative record. It shows how much went to pain and suffering, which wouldn't be other income offset. Suppose the settlement said as a matter of law in New York, this should be construed in accordance with General Obligations Law Section 5-3 or whatever, and therefore it's all attributable to pain and suffering. That would also be controlling, would it not? Honestly, I can't say for sure one way or the other. I think it might be. It's possible that it could have been. But I think it's hard to say because then they might have said, well, we think Connecticut law applies and there might be a legal fight there, which of course wouldn't be anything the court would need to defer to. But that never happened here because, as we all know, none of this was articulated to Aetna during the claim and appeal process. And I think that's really what this comes down to is, was Aetna's behavior arbitrary and capricious? That's the test. Did they rely on substantial evidence in the record? Yes. There's not even a question. The plaintiff doesn't challenge the computations that were made. And it doesn't say that Aetna overlooked any facts that were submitted or didn't consider any arguments that were made. All of that was considered. So the question is, at the end of the day, did Aetna act arbitrarily and capriciously? And the answer has to be no because it's a reasonable decision. It's based on the terms of the plan. It's reasonably based upon the circumstances. Kagan. So unless it's contrary to law. Well, if it is. Wouldn't you agree that if we were to determine that it was contrary to law and that New York law controlled it would be arbitrary and capricious? Well, I think it's hard to be arbitrary and capricious when you haven't been presented with a legal argument or any argument. If something hasn't been presented to you to consider and to accept or reject, and I think we cite a case law in our brief, the Levine case is one of them, where the court held that you can't be arbitrary and capricious for not considering an argument that was never presented to you, even a legal argument. Let me ask another question. Does the plan somewhere define what a payment for disability is? You mean another income? No, no. I meant it says, I think, that that part of the lump sum or periodic payment that is for disability will be counted. This is part of the offset provision. And it wasn't really clear to me what a payment for disability would be, because it could be so many different things. There's so many different losses one has when one becomes suddenly disabled, including loss of income, ongoing pain and suffering, future medical costs, all kinds of things. So I wondered if I had missed something in the plan, and there's a definition of a payment for disability. I don't think there's a separate definition of it other than the definition of disability under which the benefit was originally judged to be payable. That's not a payment for disability, though. No, no. I don't think so. But, Dan, the plan has a grant of discretionary authority that allows Aetna to interpret the terms of the plan. And, again, under the arbitrary and capricious review standard, their reasonable interpretations of the plan are entitled to deference. Thank you, counsel. Thank you very much. Mr. Solomon, you reserve two minutes for rebuttal. Thank you, Judge. To address Judge Carney's question about what constitutes a disability payment, there is no definition in the plan of what's a disability payment. But when you read the plan in its entirety and you look at it in context, a disability payment is the same thing as other income benefits. And other income benefits are defined in the plan. And it's specifically income replacement benefits and compensation that is intended to provide for wage loss or other kind of income replacement, economic loss. That's distinct from bodily injury payments, emotional distress payments, medical expense payments, other kinds of out-of-pocket economic loss. So, you know, to the extent that disability payments means one thing, it's what is it that the plan is insuring because it's looking to preclude duplicative payments in its reduction provisions. So the plan itself is insuring income replacement payments, and that's what disability payments are within the meaning of the plan. As to the terms of the plan, we're looking at an insurance policy here. This insurance policy is not the terms of the plan. The Supreme Court has said in Cigna v. Amara that the terms of the plan are found in the plan document, which is the statutory document under Section 402 of ERISA that establishes the plan. The summary plan description and ancillary documents like the insurance policies are not the terms of the plan. An insurance policy is merely a commercial paper, or it's a commercial instrument available on the commercial insurance market to provide benefits coverage. It's not the terms of the plan. This is just a financial product sold by an insurance company off the shelf to any disability plan that wants to buy one and provide this kind of coverage. But that doesn't make it the terms of the plan. That's why under FMC v. Holiday, insurance companies are still subject to state regulation of insurance. And that's the critical point in counsel's national uniformity argument, is that if national uniformity is the overriding goal for every ERISA plan in the country, you have just negated all state regulation of insurance as a traditional province of state regulation. Thank you. Thank you both kindly. We'll reserve decision.